CASE NO. 12-1307

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

LARA ROOSEVELT-HENNIX,

      Plaintiff – Appellee,

v.

OFFICER SHANE PRICKETT,

      Defendants - Appellant.

_____

**On Appeal from the United States District Court For the District of Colorado
The Honorable Richard P. Matsch
D.C. No. 11-cv-00353-RPM**
_____

**OPENING BRIEF OF APPELLANT OFFICER SHANE PRICKETT**
_____

Eric M. Ziporin and Sarah E. McCutcheon
**SENTER GOLDFARB & RICE, L.L.C.**
1700 Broadway, Suite 1700
Denver, Colorado 80290
Telephone: (303) 320-0509
E-mail: eziporin@sgrllc.com, smccutcheon@sgrllc.com

**ORAL ARGUMENT IS REQUESTED.
SCANNED PDF FORMAT ATTACHMENTS ARE INCLUDED.**

## **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................iv

I.    STATEMENT OF THE ISSUES FOR REVIEW ...........................................3

II.    STATEMENT OF THE CASE .......................................................................3

III.    STATEMENT OF THE FACTS ....................................................................8

IV.    SUMMARY OF ARGUMENT....................................................................17

V.    ARGUMENT................................................................................................18

        A.    Standard of Review – Motions for Summary Judgment Generally .....18

        B.    Standard of Review – Motions for Summary Judgment based on Qualified Immunity ...........................................................................18

        C.    The District Court erred when it did not find that Prickett is entitled to qualified immunity ...........................................................................20

               1.    Hennix did not show an intentional violation of any clearly established constitutional rights as guaranteed by the Fourth Amendment ...........................................................................20

                        a.    Prickett's use of the TASER did not rise to the level of a violation of Hennix's Fourth Amendment rights ...........23

                        b.    Prickett's use of the TASER was not a violation of clearly established law ...................................................30

VI.    CONCLUSION...........................................................................................40

VI.    STATEMENT REGARDING ORAL ARGUMENT ...................................40

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ..........42

CERTIFICATE OF DIGITAL SUBMISSION ......................................................43

CERTIFICATE OF SERVICE ..............................................................................44

ATTACHMENTS:

Courtroom Minutes, May 29, 2012, Doc. No. 29 ......................................................1

Transcript of Proceedings, Motion Hearing, May 29, 2012, Doc. No. 31 ...............2

Order Denying Motion to Amend Judgment, July 18, 2012, Doc. No. 34................3

Text of 42 U.S.C. § 1983 ..........................................................................................4

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                    **<u>Page</u>**

*Albright v. Rodriguez*
        51 F.3d 1531 (10th Cir. 1995) ....................................................................32

*Ashcroft v. Al-Kidd*
        -- U.S. -- ,131 S.Ct. 2074 (2011) .........................................................20, 31

*Ashcroft v. Iqbal*
        129 S.Ct. 1937 (2009)........................................................................................1

*Blackwell v. Strain*
        No. 11-2078, 2012 WL 3939917, at *7 (10th Cir., Sept. 12, 2012) .............14

*Blossom v. Yarbrough*
        429 F.3d 963 (10th Cir. 2005) ................................................................1, 12

*Brooks v. City of Seattle*
        599 F.3d 1018 (9th Cir. 2010), *reversed* 661 F.3d 433 (9th Cir. 2012), *cert
        denied* 132 S.Ct. 2682 (May 29, 2012) .......................................................36

*Brown v. City of Golden Valley*
        574 F.3d 491 (8th Cir. 2009) ...................................................34, 35, 36, 37

*Brown v. City of Golden Valley*
        534 F.Supp.2d 984 (D. Minnesota 2008) ........................................35, 36, 37

*Brown v. Montoya*
        662 F.3d 1152 (10th Cir. 2011) ....................................................................1

*Bryan v. MacPherson*
        620 F.3d 805 (9th Cir. 2010) ....................................................35, 36, 37

*Buckley v. Haddock*
No. 07-10988, 292 Fed.Appx. 791 (11th Cir. Sept. 9, 2008),
*rehearing en banc denied*, 308 Fed.Appx. 449 (Table) (11th Cir. 2008),
*cert denied* 129 S.Ct. 2381 (May 18, 2009) ....................................26, 27, 28

*Burns v. Barreto*
2012 WL 225855, at *13 (E.D. Cal. 2012) ...................................38

*Camreta v. Greene*
-- U.S. --, 131 S.Ct. 2020 (2011) ..........................................21, 22

*Casey v. City of Federal Heights*
509 F.3d 1278 (10th Cir. 2007) .............................................7, 33, 34, 35, 36

*Clark v. Ware*
-- F.Supp.2d --, 2012 WL 1994788, at *5 (E.D. Mo. 2012) ........................38

*Cockrell v. City of Cincinnati*
No. 10-4605, 468 Fed.Appx. 491, 2012 WL 573972
(6th Cir. Feb. 23, 2012) ..................................................34

*Cordova v. Aragon*
569 F.3d 1183 (10th Cir. 2009) ...................................................31

*Crowell v. Kirkpatrick*
667 F.Supp.2d 391 (D. Vermont 2009), *affrm'd* No. 09-4100-cv, 400
Fed.Appx. 592 (2nd Cir. Nov. 15, 2008) .......................................28

*Devoe v. Rebant*
No. 05-71863, 2006 WL 334297, at *5-7
(E.D. Michigan Feb. 13, 2006) ...............................................29

*Elder v. Holloway*
510 U.S. 510, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994) .............................18

*Graham v. Connor*
490 U.S. 386 (1989) ..................................................... 7, 8, 23, 24, 30, 34, 35

*Harlow v. Fitzgerald*
    457 U.S. 800 (1982) .......................................................................19

*Hernandez v. Story*,
    No. 11-2074, 459 Fed.Appx. 697, 2012 WL 207059, at *3
    (10th Cir. Jan. 25, 2012) ............................................................31

*Hope v. Pelzer*
    536 U.S. 730 (2002) .......................................................................33

*Hoyt v. Cooks*
    672 F.3d 972 (11th Cir. 2012) ...............................................28, 36

*Kerns v. Bader*
    663 F.3d 1173 (10th Cir. 2011) ....................................8, 20, 21, 22

*Magee v. City of Daphne*
    2006 WL 37919714, at *9 (S.D.Ala. Dec. 20, 2006) ..................28

*Magee v. Stitsworth*
    No. 3:08-CV-0079 PS, 2009 WL 5175205, at *4
    (N.D. Indiana Dec. 22, 2009) .....................................................29

*Martinez v. Carr*
    479 F.3d 1292 (10th Cir. 2007) .................................................19

*Mattos v. Agarano*
    590 F.3d 1082 (9th Cir. 2010), *reversed en banc* 661 F.3d 433
    (9th Cir. 2011) *cert. denied*, 132 S.Ct. 2682 and 132 S.Ct. 2684
    (May 29, 2012) .......................................................................15, 25

*Mecham v. Frazier*
    500 F.3d 1200 (10th Cir. 2007) .................................................38

*Medina v. Cram*
    252 F.3d 1124 (10th Cir. 2001) ...........................................19, 32

*Mick v. Brewer*
    76 F.3d 1127 (10th Cir. 1996) ......................................................................18

*Orem v. Rephann*
    523 F.3d 442 (4th Cir. 2008) ..............................................................35, 37

*Parker v. Gerrish*
    547 F.3d 1 (1st Cir. 2008) .............................................................35, 36, 37

*Pearson v. Callahan*
    555 U.S. 223 (2009) ......................................................................19, 20, 22

*Pierce v. Gilchrist*
    359 F.3d 1279 (10th Cir. 2004) ...............................................................33

*Romero v. Fay*
    45 F.3d 1472 (10th Cir. 1995) .................................................................34

*Ryburn v. Huff*
    132 S.Ct. 987 (2012) ................................................................................20

*Sanders v. City of Dothan*
    No. 09-16472, 409 Fed.Appx. 285, 2011 WL 149521, at *5
    (11th Cir. Jan. 19, 2011) ..........................................................................37

*Saucier v. Katz*
    533 U.S. 194 (2001) ......................................................................8, 19, 35

*Scott v. Harris*
    550 U.S. 372 (2007) ................................................................................23

*Simkins v. Bruce*
    406 F.3d 1239 (10th Cir. 2005) ...............................................................23

*Swanson v. Town of Mountain View, Colo.*
    577 F.3d 1196 (10th Cir. 2009) ..........................................................32, 33

*Thomas v. Durastanti*
607 F.3d 655 (10th Cir. 2010) ........................................................20, 31, 32

*Vinyard v. Wilson*
311 F.3d 1340 (11th Cir. 2002) ...................................................39

*Walker v. City of Orem*
451 F.3d 1139 (10th Cir. 2006) ...................................................12

*Weigel v. Broad*
544 F.3d 1143 (10th Cir. 2008) ...................................................19

*White v. Martin*
No. 10-7064, 424 Fed.Appx. 736 (10th Cir. 2011 June 8, 2011) ...........34, 37

*Willkomm v. Mayer*
No. 05 C 523 S., 2006 WL 582004, at *3-4
(W.D. Wisconsin March 9, 2006) ...................................................29

*Wilson v. Layne*
526 U.S. 603 (1999) ...................................................32

*Zia Trust Co. ex rel. Causey v. Montoya*
597 F.3d 1150 (10th Cir. 2010) ...............................................8, 12

**Statutes**                                                                **Page**

28 U.S.C. § 1291 (2006) ...........................................................1

28 U.S.C. § 1331, 1343(a) .....................................................1

42 U.S.C. § 1983...................................................................3, 4

## **PRIOR OR RELATED APPEALS**

There are no prior or related appeals.

## JURISDICTIONAL STATEMENT

The District Court exercised jurisdiction over Appellee Lara-Roosevelt Hennix's ("Hennix's") claims pursuant to 28 U.S.C. §§ 1331, 1343(a), as Hennix's Complaint raised a federal question. [Aplt. App. at 0008, ¶ 2.] Hennix alleged that Appellant Shane Prickett ("Prickett") and Defendant James Barr ("Barr") had deprived her of her rights, privileges, and immunities secured by the Constitution of the United States. [Aplt. App. at 0012, ¶ 26 – 0015, ¶ 49.] Specifically, Hennix asserted that Prickett's use of force against her violated her right to be free from the use of unreasonable and excessive force as secured by the Fourth and Fourteenth Amendments. [*Id.*]

This Court has jurisdiction over all "final orders" of the district courts. 28 U.S.C. § 1291 (2006). The District Court's order denying qualified immunity "is a 'final decision' within the meaning of [28 U.S.C.] § 1291." *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1945-47 (2009). *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011) ("a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291.") *See also Blossom v. Yarbrough*, 429 F.3d 963, 966 (10th Cir. 2005) (the Tenth Circuit may reverse a trial court on an interlocutory basis if the plaintiff's version of the facts does not amount to a

violation of a clearly established right; this is true even if some of the facts are controverted.)

The District Court entered its order denying Prickett qualified immunity on May 29, 2012. [Aplt. App. at 0280, 0310-0311.] On June 30, 2012, Prickett filed a Combined Motion and Memorandum Brief in Support of Motion to Amend Judgment ("Motion to Amend Judgment") pursuant to Fed.R.Civ.P. 59(e). [Aplt. App. at 0313-0318.] The District Court denied Prickett's Motion to Amend Judgment on July 18, 2012. [Aplt. App. at 0351.] Thereafter, Prickett filed his Notice of Appeal on August 10, 2012. Therefore, Prickett timely filed his appeal with this Court under Fed.R.App.P. 3 and 4(a)(4)(iv).

## I.    STATEMENT OF THE ISSUES FOR REVIEW

Did the District Court err in denying Prickett's Motion for Summary Judgment based on qualified immunity?  Did Hennix fail to meet her burden of establishing that Prickett's conduct violated clearly established law pursuant to 42 U.S.C. § 1983 under the Fourth Amendment?

## II.    STATEMENT OF THE CASE

On February 11, 2010, Prickett and Barr were employed by the City of Florence, Colorado ("the City") as police officers.  On that date, Barr contacted Hennix for a traffic violation, and subsequently placed her under arrest based on a suspicion that she was driving under the influence of alcohol.  Prickett responded to the scene of Hennix's arrest.  While seated in the rear seat of Barr's patrol vehicle, Hennix's disruptive demeanor and admitted failure to remain calm led Prickett to conclude that placing Hennix in leg restraints prior to her transport away from the scene was warranted.  When Hennix failed to comply with the officers' orders to place her feet outside the patrol vehicle—so that the leg restraints could be applied—Prickett applied his TASER to Hennix's leg as a pain compliance measure.  Specifically, Prickett applied his TASER in drive stun mode directly to Hennix's upper thigh for one to two seconds.  Prickett's use of force resulted in Hennix's immediate compliance—the officers were able to remove

Hennix's feet from the vehicle and place her in leg restraints.

While Barr initially contacted Hennix for exceeding the speed limit and subsequently learned that she was driving without a valid license, he ultimately also cited Hennix for driving under the influence, child abuse (for not having her three-year old daughter secured by a proper restraint device at the time of the traffic stop), and failure to provide an adequate child restraint device.  During the criminal prosecution of these offenses, Hennix admitted guilt to driving while ability impaired and child abuse.

In her Complaint, Hennix alleged that Prickett's use of the TASER, and Barr's acquiescence to the use of the TASER, constituted excessive force in violation of her rights under the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 (First and Second Causes of Action, respectively).  Hennix further alleged that the City's inadequate training and supervision of Prickett and Barr caused the violation of her constitutional rights under 42 U.S.C. § 1983 (Third Cause of Action).  Finally, Hennix alleged that Prickett's and Barr's conduct was a tortious assault under state law, and the City was vicariously liable for same (Fourth Cause of Action).

Prickett, Barr, and the City filed a Combined Motion and Memorandum Brief in Support of Motion for Summary Judgment ("Motion for Summary

Judgment") pursuant to Fed.R.Civ.P. 56 on January 24, 2012. [Aplt. App. at 0030.] Importantly, as to Hennix's First and Second Causes of Action, Prickett and Barr asserted the affirmative defense of qualified immunity. Hennix filed a Response Brief in opposition to the Motion for Summary Judgment on March 1, 2012. [Aplt. App. at 0111.] Prickett, Barr, and the City filed a Reply Brief in support of the Motion for Summary Judgment on March 19, 2012. [Aplt. App. at 0242.]

The District Court heard oral argument on the Motion for Summary Judgment on May 29, 2012. [Aplt. App. at 0280-0312.] At the conclusion of the hearing, the District Court granted the Motion for Summary Judgment with respect to all of Hennix's claims against Barr and the City.[1] Moreover, the District Court granted summary judgment in favor of Prickett with respect to Hennix's state tort assault claim. As a result, Barr and the City were effectively dismissed as parties from the litigation, and no issues on appeal pertain to these claims or these Defendants, including Hennix's state tort assault claim as against Prickett.

With respect to Hennix's First Cause of Action against Prickett, the District

---

[1] Based on Prickett's August 10, 2012 timely filing of his Notice of Appeal, and by operation of Fed.R.App.P. 28.1, the deadline for notice of a cross-appeal regarding the dismissal of Hennix's claims against the City and Barr expired on August 14, 2012. Hennix has not filed any cross-appeal regarding the dismissal of these claims, or the dismissal of these defendants from this action, and issues related to such claims are not before this Court.

Court denied summary judgment.    At the conclusion of the hearing on the Motion for Summary Judgment, the District Court determined that a factual dispute existed as to the "need for the use of a taser device," precluding summary judgment. [Aplt. App. at 0310.]   Otherwise, the District Court did not address Prickett's assertion of the qualified immunity defense.   The District Court did not analyze whether Prickett's conduct—even assuming all facts in favor of the non-moving party—rose to the level of a constitutional violation.   Further, the District Court did not address what clearly established law put Prickett on notice that his use of the TASER on Hennix on February 11, 2010 was unlawful.

In light of these deficiencies, on June 26, 2012, Prickett filed his Motion to Amend Judgment.   Prickett requested that the District Court "issue an amended order that more specifically [addressed] the qualified immunity argument raised by [him], including whether or not [his] conduct resulted in a violation of [Hennix's] Fourth and/or Fourteenth Amendment rights, and whether or not clearly established law put [him] on notice that his conduct was unlawful."  [Aplt. App. at 0316.]

In response to the Motion to Amend Judgment, on July 18, 2012, the District Court issued a written order denying Prickett's request.   The District Court's Order stated in its entirety:

> On June 26, 2012, the defendant Shane Prickett filed a Combined Motion and Memorandum Brief in Support of Motion to Amend Judgment, asserting that this Court failed to address the defendant's qualified immunity defense.  There is clearly established law that a police officer violates the Fourth Amendment when he uses excessive force against a person in his custody and the test is what a reasonable police officer would do under the same circumstances.  In this case, there is a factual dispute concerning the conduct of the plaintiff and the reasonableness of the use of force against her, including the use of the Taser device.  It is therefore ordered that the motion is denied.

[Aplt. App. at 0351.]

While denying Prickett's request to amend the order of judgment, the above statements generically addressed the clearly established law prong of the qualified immunity question, which the District Court had not previously done.  However, the District Court's ruling remained problematic in that it inadequately answered the question of what clearly established law put Prickett on notice that his use of the TASER on February 11, 2010 was unlawful.

Specifically, the District Court's July 18, 2012 Order presumably relied upon the holding from *Graham v. Connor*, 490 U.S. 386, 395 (1989), for the general proposition that it was clearly established at the time Prickett tased Hennix that individuals have a right to be free from use of excessive force.  However, as this Court has noted and the Supreme Court has held, *Graham's* general proposition is not enough to turn *all* uses of excessive force into violations of clearly established law.  *See Casey v. City of Federal Heights*, 509 F.3d 1278, 1284

7

(10th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)(internal quotations omitted) (emphasis in original). Thus, the District Court initially erred when it failed to address the clearly established law element of the qualified immunity test in its May 29, 2012 ruling. The District Court's July 18, 2012 Order did not correct this deficiency. The District Court's generic reference to *Graham* as clearly established law in this matter answered that prong of the qualified immunity question at too high a degree of generality, and further did not satisfy the more particularized inquiry that is required when a court is faced with the assertion of the qualified immunity defense. *See Kerns, et al. v. Bader, et al.*, 663 F.3d 1173, 1180-83 (10th Cir. 2011) (internal citations omitted).

Based on the above, this Court has jurisdiction over this appeal, in spite of the District Court's characterization that a dispute of material fact precluded summary judgment. Prickett's issues on appeal implicate the purely legal question of whether the facts as alleged by Hennix support a claim of violation of clearly established law. *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1152 (10th Cir. 2010).

### III.    <u>STATEMENT OF THE FACTS</u>

Prickett submits the following material facts as found by the District Court during the May 29, 2012 hearing, as well as those undisputed material facts

supported by the record in this matter.

On February 11, 2010, Prickett, and Barr were both employed as police officers for the City.  [Aplt. App. at 0022, ¶ 5; 0282, p.2, ll.8-9.]  On that date, Barr initiated contact with a vehicle operated by Hennix for a traffic violation—exceeding the speed limit.  [Aplt. App. at 0062, p.111, l.23 – p.112, l.16; 0063, p.113, l.8 – p.115, l.5; 0078, p.138, l.2 – p.139, l.8; 0282, p.2, ll.13-18.]  Hennix pulled the vehicle off the roadway into a parking lot and stopped.  [Aplt. App. at 0063, p.114, l.15 – p.115, l.5; 0079, p.141, l.17 – p.143, l.2; 0282, p.2, ll.18-19.]  Barr pulled his vehicle in behind Hennix's vehicle.  [Aplt. App. at 0063, p.115, ll.3-25; 0282, p.2, ll.18-19.]

Barr contacted the driver of the vehicle that he observed exceeding the speed limit, identified as Hennix.  [Aplt. App. at 0064, p.119, l.11 – 0065, p.121, l.10; 0079, p. 143, l.3 – p.144, l.1; 0282, p.2, l.24.]  Barr observed that an adult male passenger and a small child (later identified as Hennix's daughter) were also seated in the vehicle.  [Aplt. App. at 0064, p. 119, ll.16-24.; 0011, ¶ 18; 0282, p.2, ll.20-23.][2]  Barr observed that Hennix had bloodshot and watery eyes, and slurred speech.  [Aplt. App. at 0065, p. 121, ll. 8-14; 0282, p.2, l.24 – 0283, p.3, l.2.]

---

[2] As noted by the District Court and mentioned above, Hennix's daughter was not secured in the proper restraint device, and this circumstance formed in part the basis for Barr's ultimate citation for an offense of child abuse.  [Aplt. App. at 0282, p.2, l.23.]

Based on these observations, Barr suspected that Hennix was under the influence of alcohol, and asked her how much she had had to drink.  [Aplt. App. at 0065, p.121, ll.8-14; 0079, p.143, l.3 – 0080, p. 145, l.5; 0282, p.2, l.24 – 0283, p.3, l.2.] In response, Hennix admitted that she had two or three drinks.  [Aplt. App. at 0079, p. 143, l.3 – 0080, p. 145, l.5; 0282, p.2, l.24 – 0283, p.3, l.2.]

Barr asked Hennix if she would step out of the vehicle, and voluntarily perform standard roadside sobriety tests.  [Aplt. App. at 0065, p.124, ll.10-15; 0080, p.145, l.3 – p.146, l.1; 0283, p.3, ll.2-7.]  Hennix agreed to perform standard roadside sobriety tests.  [*Id.*]  Barr conducted the horizontal gaze nystagmus test on Hennix, resulting in indicators positive for intoxication.  [Aplt. App. at 0065, p.124, l.10 – 0066, p.126, l.22.]  Barr also began to instruct Hennix through additional tests, including walking heel to toe, but stopped all testing when Hennix made a comment about a back injury.  [Aplt. App. at 0066, p.126, l.23 – p. 128, l.21; 0080, p. 147, l.16 – 0081, p. 151, l.18; 0283, p.3, ll.2-7.]  While Barr was instructing Hennix through these maneuvers, Prickett also responded to the scene. [Aplt. App. at 0067, p.131, l.20 – p.132, l.13; 0091, p.154, ll.5-15; 0283, p.3, l.24.]

Barr then placed Hennix under arrest for the offense of driving under the influence, and handcuffed her hands behind her back.  [Aplt. App. at 0066, p.128, l.16 – 0067, p.130, l.3; 0081, p.151, l.14 – p.152, l.1; 0283, p.3, ll.7-10.]  Barr

advised Hennix that she was under arrest for driving under the influence. [Aplt. App. at 0082, p.155, l.15 – p.156, l.8.] While Hennix had voluntarily presented her hands for cuffing, by her own admission she became "very angry" and "very frustrated" when she believed that Barr had placed her in handcuffs in view of her daughter (who was still seated in the vehicle previously operated by Hennix). [Aplt. App. at 0067, p.151, l.14 – p.152, l.23; 0083, p.158, ll.2-25; 0067, p.130, ll.1-23; 0283, p.3, ll.11-15.] Despite Hennix's change in demeanor, Barr remained professional. [*Id.*] Barr then seated Hennix in the back seat of his patrol vehicle, with the vehicle's door closed. [Aplt. App. at 0067, p.131, l.15 – 0068, p.134, l.20; 0082, p.156, l.9 – 0083, p.159, ll.1-4; 0283, p.3, ll.7-10.] Barr returned to the vehicle Hennix had been driving to speak with the male passenger and determine if there was anyone who could retrieve Hennix's daughter from the scene. [Aplt. App. at 0067, p.132, l.9 – 0068, p.134, l.20; 0069, p.137, ll.2-25.][3]

While seated in the backseat of Barr's patrol vehicle, and while Barr and Prickett were addressing the male passenger, Hennix became increasingly upset. [Aplt. App. at 0083, p. 159, l.1 – 0084, p.161, l.2; 0283, p.3, ll.11-15.] Hennix began to panic, and started yelling at the officers to return to the patrol vehicle and

---

[3] Because the male passenger was intoxicated, and the vehicle lacked a proper restraint device for Hennix's daughter, the officers could not permit the male passenger to transport the daughter away from the scene. [Aplt. App. at 0283, p.3, ll.2-4.]

that she wanted to know what was going on with her daughter.  [Aplt. App. at 0083, p. 159, l.1 – 0084, p.161, l.2; 0283, p.3, ll.11-15.]    During this outburst, Hennix struck her head against the window of the patrol vehicle.  [*Id*.; Aplt. App. at 0068, p.136, ll.9-17; 0283, p.3, ll.19-23.] [4]

Prickett returned to the patrol vehicle and opened the door, and Hennix told Prickett that she wanted the vehicle's door to remain open and asked that one of the officers stand by the open door.  [Aplt. App. at 0083, p. 159, l.1 – 0084, p.161, l.2; 0284, p.4, ll.1-5.]  Prickett instructed Hennix stop banging her head against the window.  [Aplt. App. at 0093, p.166, ll.4-6; 0069, p.138, l.23 – p.139, l.8; 0085, p.165, l.12 – p.168, l.2.]  The officers also instructed Hennix to relax and calm down.  [Aplt. App. at 0085, p.168, l.3 – 0086, p.169, l.20.]  Hennix refused to calm

---

[4] Prickett described that Hennix kicked at the interior patrol vehicle with her feet, as well as banged her head against the patrol vehicle's window.  [Aplt. App. at 0092, p.162, l.1 – 0093, p.166, l.6.]  Hennix denied kicking the interior of the vehicle, and only admitted to banging her head against the window.  [Aplt. App. at 0083, p. 159, l.1 – 0084, p.161, l.2; 0085, p.167, ll.5-17.]  In issuing its findings of fact, the District Court accepted Hennix's account.  [Aplt. App. at 0283, p.3, ll.19-23.]  In this regard, the District Court and this Court should rely on the facts as asserted by Hennix, or view the undisputed material facts in the light most favorable to Hennix.  *See Zia Trust Co. ex. rel. Causey v. Montoya*, 597 F.3d 1150, 1152 (10th Cir. 2010) (quoting *Walker v. City of Orem*, 451 F.3d 1139, 1154 (10th Cir. 2006) (internal quotation omitted) (the Tenth Circuit can consider the purely legal question of whether the facts as alleged by the plaintiff support a claim of violation of clearly established law.)  *See also Blossom v. Yarbrough*, 429 F.3d 963, 966 (10th Cir. 2005) (internal quotations and citations omitted)(The scope of the Tenth Circuit's inquiry is limited to legal challenges to the denial of summary judgment based on qualified immunity, and the appellate court may reverse on an interlocutory basis if the plaintiff's version of the facts does not amount to a violation of a clearly established right.  This is true even if some of the facts are controverted.)

down and continued to yell and scream at the officers about standing by the vehicle and what was happening with her daughter. [Aplt. App. at 0085, p.166, l.12 – 0086, p.171, l.4.] By her own admission, Hennix's demeanor was consistent with a "panic attack." [*Id.*] In response, the officers informed Hennix that they had reached her father, and that he was going to pick up her daughter from the scene. [Aplt. App. at 0086, p. 170, l.14 – p.171, l.4; 0069, p.138, ll.1-8.]

Prickett determined that, based on Hennix's demeanor, Hennix should be further restrained prior to transport to the police department for continued processing. [Aplt. App. at 0093, p.168, l.10 – 0094, p.170, l.4; 0069, p.140, l.8 – 0070, p.142, l.21; 0283, p.3, ll.19-21.][5] Specifically, Prickett determined that further restraint was necessary to prevent Hennix from hurting herself, and to prevent her from damaging the interior of the vehicle. [Aplt. App. at 0093, p.168, l.21 – 0094, p.169, l.2; 0283, p.3, ll.19-23.] Prickett requested that Barr retrieve a leg restraint device from his patrol vehicle. [*Id.*] Prickett opened the patrol vehicle's rear door, and ordered Hennix to place her feet outside the vehicle (so that the leg restraints could be placed on her). [Aplt. App. at 0086, p.171, l.5 – 0087, p.173, l.1; 0070, p.143, ll.3-16; 0284, p.4, ll.1-3.]

---

[5] In issuing its findings of fact in this regard, the District Court inadvertently referred to Barr, as opposed to Prickett, as the officer that had determined to place Hennix in leg restraints.

Hennix refused to place her feet outside of the vehicle and continued to scream at the officers. [Aplt. App. at 0085, p.168, l.3 – 0086, p.172, l.15.][6] Barr attempted to physically remove Hennix's feet from the vehicle, but was unable to do so because Hennix had wedged her feet underneath the cage partition in the

_____

[6] The record in this matter contains two accounts as to what occurred after the officers commanded Hennix to place her feet outside the vehicle. On one hand, Hennix stated that because she was handcuffed with her hands behind her back, she was unable to lift herself and turn her body to place her feet outside the vehicle. [Aplt. App. at 0086, p.171, l.5 – p.172, l.15.] On the other hand, Barr explained that when commanded to remove her feet from the vehicle, Hennix "wedged her feet underneath the cage [partition in the patrol vehicle], and arched her back with her shoulders pressing against the back of the seat." [Aplt. App. at 0070, p.143, ll.11-22.] Barr explained that he attempted to physically maneuver Hennix's feet outside the vehicle, but Hennix's actions prevented him from removing her feet. [Aplt. App. at 0070, p.144, ll.6-25.] Importantly, the District Court declined to make any findings of fact with regard to this issue, and only concluded there was a dispute as to what occurred. [Aplt. App. at 0300, p.20, l.8 – 0301, p.21, l.2.] While this Court should view all factual inferences in Hennix's favor, this Court need not credit any factual inferences that are "blatantly contradicted by the record." *See Blackwell v. Strain*, No. 11-2078, 2012 WL 3939917, at *7 (10th Cir., Sept. 12, 2012) (unpublished) (internal citations omitted). In this instance, Hennix's contention that she was physically incapable of removing her feet from the vehicle is not supported by the record. By Hennix's own admission, Prickett's application of the TASER to her thigh resulted in Hennix immediately releasing her feet and allowing their removal from the vehicle. [Aplt. App. at 0179, p.175, l.7 – 0180, p.177, l.15 (wherein Hennix admits that the use of the TASER allowed the officers to move her feet out of the patrol vehicle); 0072, p.150, l.25 – p.151, l.9.] Had Hennix been positioned such that her feet physically could not have been removed from the vehicle due to the fact that she was handcuffed and without adjustment of her entire body, as she described, the use of the TASER would have been ineffective. Stated another way, the only explanation for Hennix's inability to remove her feet from the vehicle that is consistent with the remainder of the undisputed record (and Hennix's own admissions) is that she was willfully and consciously refusing to put her feet outside the vehicle by wedging them underneath the vehicle's partition, as described by Barr. As a result, this Court may assess the case based on its own *de novo* review of which facts a reasonable jury could accept as true, including that Hennix affirmatively refused to place her feet outside the vehicle. *See Id.* (internal citations and quotations omitted).

vehicle.  [Aplt. App. at 0070, p.143, l.11 – 0071, p.145, l.15; 0094, p.170, l. 15 – p.172, l.10; 0087, p.175, l.16 – p.176, l.16; 0299, p.19, l.8 – 0300, p.20, l.22.]

Prickett removed his TASER, and again ordered Hennix to place her feet outside of the vehicle several times.  [Aplt. App. at p.170, l.20 – p.171, l.14; 0098-99; 0100-101.][7] [8]  In response, Hennix stated, "Fucking TASE me!"  [Aplt. App. at 0098-0102.]  Hennix continued to refuse to put her feet outside the vehicle, and Prickett placed the TASER directly against Hennix's thigh.  [Aplt. App. at 0096, p.184, ll.21-22; 0098-0102; 0284, p.4, ll.1-12.]  Prickett activated the TASER in drive stun mode for one to two seconds as he held it against Hennix's thigh.  [*See Id.*; Aplt. App. at 0095, p.178, l.12 – 0097, p.187, l.24; 0071, p.147, l.21 – 0072, p.149, l.17; 0098-0102; 0284, p.4, ll.1-12.][9]

---

[7] The TASER Prickett used was equipped with an audio/video recorder that recorded a portion of his contact with Hennix.  [Aplt. App. at 0095, p.178, l.12 – 0097, p.187, l.12; 0071, p.147, l. 21 – 0072, p.149, l.17.]  The recording from that device was appended to Prickett's Motion for Summary Judgment as "Exhibit D," and is contained within Appellant's Appendix at Aplt. App. 0099.  A transcript of the recording was appended to Prickett's Motion for Summary Judgment as "Exhibit E," and is included in the Appellant's Appendix at Aplt. App. 0100-102.  The recording is playable with Windows Media Player, and can be played in a single consecutively running clip, or separate clips.

[8] There is no allegation or evidence in the record that the audio recording has been doctored or tampered with in any way.  Further, there is no allegation or evidence in the record that the transcript of the recording is inaccurate.

[9] It is undisputed that Prickett used the TASER in drive stun mode.  [Aplt. App. at 0012, ¶ 23.]  When a TASER is used in drive stun mode, the operator removes the dart or probe cartridge and pushes two electrode contacts located on the front of the TASER directly against the suspect.  *See Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011*) cert. denied,* 132 S. Ct. 2681, 183 L. Ed. 2d 62 (U.S. 2012).  In this mode, the TASER delivers

Hennix immediately released her feet from the vehicle, and Barr was able to place her feet in leg restraints. [Aplt. App. at 0072, p.150, l.25 – p.151, l.12; 0087, p.175, l.16 – p.176, l.16; 0181, p.183, ll.5-9.] After the TASER was applied and removed, Hennix continued to scream at the officers, including yelling, "It hurts!" [Aplt. App. at 0099, 0101.] In response to Hennix's continued agitation and screaming, Prickett stated, "Relax. No shit it hurts. Now relax and quit kicking my car." [*Id*.]

Barr then transported Hennix to the City's police department. [Aplt. App. at 0072, p.151, l.14 – p.152, l.14; 0284, p.4, ll.4-12.] In route to the police department, Hennix advised Barr that she could not feel her legs. [Aplt. App. at 0072, p.151, ll.14-17, 0012, ¶ 25; 0284, p.4, ll.4-12.] Barr then contacted dispatch and requested that medical personnel meet him at the police department to evaluate Hennix. [Aplt. App. at 0072, p.151, ll.14-25; 0284, p.4, ll.4-12.] Medical personnel met Barr and Hennix at the police department and then transported her to the hospital. [Aplt. App. at 0073, p.153, ll.15-17; 0088, p.186, l.14 – p.188, l.25; 0284, p.4, ll.4-12.]

While Hennix has pointed out that following the use of the TASER, she

---

an electric shock to the suspect, but it does not cause an override of the suspect's central nervous system as it does in dart or probe mode. *See Id*.

underwent back surgery for paralysis in her lower extremities, Hennix has pointed to no evidence in the record that her alleged paralysis was caused by the use of the TASER in drive stun mode.  [Aplt. App. at 0115; 0251; 0303, p.23, l.12 – 0305, p.25, l.14.]  The District Court did not make a finding that the use of the TASER caused Hennix's alleged paralysis.  [Aplt. App. at 0303, p.23, l.12 – 0305, p.25, l.14.]  As such, the facts as before this Court remain that the only injury to Hennix attributable to Prickett's use of the TASER was momentary pain, as evidenced by her comment that the TASER hurt.

## IV.    SUMMARY OF THE ARGUMENT

The District Court erred when it found that Prickett was not entitled to summary judgment based on the affirmative defense of qualified immunity.

Prickett is entitled to qualified immunity.  Prickett's use of the TASER was for a legitimate law enforcement purpose—namely, to gain the compliance of a partially restrained, non-violent misdemeant who repeatedly refused to comply with lawful orders.   As such, Prickett's use of the TASER was objectively reasonable, and did not rise to the level of a violation of Hennix's Fourth Amendment rights.

Even assuming *arguendo* that Prickett's use of the TASER did result in a constitutional violation, there was no clearly established law on February 11, 2010

that put Prickett on notice that his conduct was unlawful. In addition, in denying Prickett's entitlement to qualified immunity, the District Court erred when it ultimately addressed the clearly established law prong of the qualified immunity analysis at too high a degree of generality.

Because the undisputed facts viewed in the light most favorable to Hennix reveal that Prickett's conduct was consistent with Fourth Amendment standards, Prickett is entitled to qualified immunity from Hennix's claims.

## V.    ARGUMENT

### A.    Standard of Review – Motions for Summary Judgment Generally

The Tenth Circuit reviews a district court's qualified immunity determination at the summary judgment stage *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *See Mick v. Brewer*, 76 F.3d 1127, 1134-35 (10th Cir. 1996) (internal citations omitted). "Whether an asserted federal right was clearly established at a particular time ... presents a question of law ... [that] must be resolved *de novo* on appeal." *Id*. (quoting *Elder v. Holloway,* 510 U.S. 510, ----, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994) (citation omitted)).

### B.    Standard of Review – Motions for Summary Judgment based on Qualified Immunity

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct

18

does not violate clearly established constitutional rights.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001).

After a defendant asserts qualified immunity, the burden shifts to the plaintiff to demonstrate that (1) defendant's actions violated a constitutional or statutory right, and (2) the right was clearly established at the time of defendant's conduct.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Although the court is not required to address these inquiries in any specific order, *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009), if the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity, *Medina*, 252 F.3d at 1128.  After identifying the constitutional rights allegedly violated, the court must determine whether the conduct was objectively reasonable in light of the clearly established law at the time it took place.  *Weigel v. Broad*, 544 F.3d 1143, 1151 (10th Cir. 2008).  In order for the law to be considered clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007) (citations omitted).  The law must be clearly established with regard to the specific

context of the case, not as a broad general proposition. *Thomas v. Durastanti*, 607 F.3d 655, 669-70 (10th Cir. 2010). Absent controlling authority, a plaintiff must show "a robust consensus of cases of persuasive authority." *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2084 (2011). A plaintiff fails to meet his burden and the presumption of qualified immunity remains when "[n]o decision" of the Supreme Court or the Tenth Circuit has found a violation "on facts even roughly comparable to those present" in the case at issue. *Ryburn v. Huff*, 132 S.Ct. 987, 990 (2012).

C. **The District Court erred when it did not find that Prickett is entitled to qualified immunity.**[10]

1. **Hennix did not show an intentional violation of any clearly established constitutional rights as guaranteed by the Fourth Amendment.**

As a preliminary matter, this Court has recently discussed the order in which it may address the two prongs of the qualified immunity question. *See Kerns v. Bader*, 663 F.3d 1173, 1180-82 (10th Cir. 2011). This Court noted that the Supreme Court has recently instructed that courts should proceed directly to, should address only, and should deny relief exclusively based on the second element of the qualified immunity test in seven particular circumstances outlined in *Pearson v. Callahan*, 555 U.S. 223, 236-42 (2009): (1) when the first,

---

[10] The decision of the District Court being appealed is found at Aplt. App. at 0280; 0310, p.30, l.13 – 0311, p.31, l.15; 0351.

constitutional violation question is so factbound that the decision provides little guidance for future cases; (2) when it appears that the question will soon be decided by a higher court; (3) deciding the constitutional question requires an uncertain interpretation of state law; (4) qualified immunity is asserted at the pleading stage and the precise factual basis for the claim may be hard to identify; (5) tackling the first element may create a risk of bad decisionmaking due to inadequate briefing; (6) discussing both elements risks bad decisionmaking because the court is firmly convinced that the law is not clearly established and is thus inclined to give little thought to the existence of the constitutional right; and (7) the doctrine of constitutional avoidance suggests the wisdom of passing on the first constitutional question because it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right. *See Kerns*, 663 F.3d at 1180-81 (citing *Camreta v. Greene*, -- U.S. --, 131 S.Ct. 2020, 2032 (2011) (internal quotations omitted).

In *Kerns*, this Court was confronted with the circumstance where the district court had failed to address the second, clearly established law element of the qualified immunity analysis. *Kerns*, 663 F.3d 1181. Compounding the problem was the fact that, in reference to the first element of the qualified immunity test, it was unclear whether a constitutional violation took place. *See Id*. This Court

concluded that when faced with these circumstances, it would "do well—as *Pearson* and *Camreta* remind us—to proceed directly to the clearly established law question when [the Court] is sure it yields immunity anyway." *Kerns*, 663 F.3d 1181.

Here, for the reasons set forth more fully below, Hennix has not pointed to, and cannot point to, any clearly established law that put Prickett on notice that his use of the TASER on February 11, 2010 was violative of Hennix's Fourth Amendment rights. Moreover, the District Court only superficially addressed the clearly established law prong of the qualified immunity test at too high a degree of generality. [Aplt. App. at 0280; 0310, p.30, l.13 – 0311, p.31, l.15; 0351.] In these circumstances, as articulated in *Kerns*, it is appropriate for this Court to proceed directly to the second element of the qualified immunity analysis. As this Court has noted, consideration of whether the defendant's conduct actually resulted in a violation of the plaintiff's constitutional rights is unnecessary, and runs the risks of resulting in bad decisionmaking. The issues presented by the instant case warrant a similar approach.

That said, this Court may not agree that consideration of the first prong of the qualified immunity analysis is unnecessary. Prickett therefore provides the

following arguments and discussion in support of a finding that his conduct did not

rise to the level of a violation of Hennix's Fourth Amendment rights.

> **a.    Prickett's use of the TASER did not rise to the level of a violation of Hennix's Fourth Amendment rights.**

In analyzing an excessive force claim under the Fourth Amendment, "the

question is whether the officers' actions were 'objectively reasonable' in light of

the facts and circumstances confronting them, without regard to their underlying

intent or motivation." *Graham*, 490 U.S. at 397 (1989). Under this standard,

courts must "balance the nature and quality of the intrusion on the individual's

Fourth Amendment interests against the importance of the governmental interests

alleged to justify the intrusion." *Scott v. Harris*, 550 U.S. 372, 383 (2007); *id.* at

396. The key inquiry is "whether it would be clear to a reasonable officer [in

defendant's position] that his conduct was unlawful in the situation he confronted."

*Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). In determining whether

the use of force is reasonable in a particular situation, the courts consider (1) the

severity of the crime at issue; (2) whether the suspect poses an immediate threat to

the safety of the officers or others; and (3) whether he is actively resisting arrest or

attempting to flee. *See Graham*, 490 U.S. 396. The reasonableness of an officer's

particular use of force must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396-397.

Prickett's decision to apply the TASER to Hennix's leg after she refused repeated commands to voluntarily place her feet outside of the vehicle for the purpose of securing her in leg restraints cannot be considered excessive. Hennix had indicia of alcohol intoxication, and during the encounter, she became increasingly more agitated and confrontational after she was placed in the rear seat of Barr's patrol vehicle. [Aplt. App. at 0065, p.121, ll.8-14; 0282, p.2, 1.24 – 0283, p.3, l.2; Aplt. App. 0079, p.143, l.3 – 0080, p.145, ll.3-5; 0282, p.2, l.24 – 0283, p.3, l.2-15; 0067, p.151, l.14 – p.152, l.23; 0083, p.158, ll.2-25; 0067, p.130, ll.1-23.] Despite the officers' repeated instructions to calm down, Hennix demonstrated a willingness to injure herself and damage the patrol vehicle by striking her head against the rear window. [Aplt. App. at 0083, p.159, l.1 – 0084, p.161, l.2; 0283, p.3, ll.11-23; 0068, p.136, ll.9-17.] Prickett reasonably perceived that Hennix's unpredictable and disruptive behavior warranted placing her in further restraints prior to attempting to transport her away from the scene of her arrest. [Aplt. App. at 0093, p.168, l.10 – 0094, p.170, l.4; 0069, p.140, l.8 – 0070, p.142, l.21; 0283, p.3, ll.19-21.] Even after Prickett displayed his TASER, Hennix continued to scream statements about her daughter and yell, "Fucking tase me!"

[Aplt App. at 0099, 101.][11]   Hennix resisted Barr's attempts to remove her feet from the vehicle, and failed to voluntarily present her feet so that her legs could be placed in restraints.   [*See* fn. 6, *supra*.]   Faced with Hennix's persistent lack of cooperation and the legitimate need to further secure Hennix prior to transport, Prickett used the TASER as a last resort and as a pain compliance technique.   As a result, the brief application of the TASER, the temporary pain it induced, and the minimal intrusion on Hennix that resulted did not outweigh the officers' need to further restrain Hennix prior to completion of transport.   As a result, Prickett's conduct was a reasonable use of force under the Fourth Amendment.

Evaluating whether Prickett's use of the TASER resulted in a violation of Hennix's Fourth Amendment rights is complicated by the fact that there is not a well developed body of case law on the use of TASERs in drive stun mode in this Court.   Indeed, TASERs are a relatively new technology, and prior to 2006, only three federal circuits had decided an excessive force case involving the use of a TASER.  *See Mattos v. Agarano*, 590 F.3d 1082, 1089-90 (9th Cir. 2010), *reversed en banc* 661 F.3d 433 (9th Cir. 2011), *cert. denied* 132 S.Ct. 2682 and 132 S.Ct. 2684 (May 29, 2012).   The majority of the cases involving use of a TASER

---

[11]  Hennix undisputed comment, "Fucking Tase me!" reveals that she was aware of the TASER and reasonably cognizant of the potential that Prickett would apply the TASER, and it would be unreasonable for her to now claim that she had no warning that the TASER may be used.

address instances where TASER probes were deployed ("dart mode" or "probe mode") at an aggressively resistant and combative arrestee or detainee. Fewer cases address a TASER employed in a drive stun manner on an arrestee outside of a custodial detention setting, and the Tenth Circuit has not addressed a similar factual pattern—namely, the use of TASER as a pain compliance technique against a partially restrained, non-violent but disruptive misdemeant who disobeyed official commands.

Given these circumstances, this Court should look to authority outside of this jurisdiction for guidance in determining whether Prickett's conduct amounted to a constitutional violation. Other federal courts have upheld the use of a TASER in drive stun mode as a pain compliance technique after the suspect refused to comply with lawful commands. For example, in *Buckley v. Haddock*, No. 07-10988, 292 Fed.Appx. 791, 795-96, (11th Cir. Sept. 9, 2008), *rehearing en banc denied*, 308 Fed.Appx. 449 (Table) (11th Cir. 2008), *cert. denied* 129 S.Ct. 2381 (May 18, 2009) (unpublished), the Eleventh Circuit analyzed comparable circumstances and determined that multiple applications of a TASER in drive stun mode against a handcuffed, but otherwise non-compliant arrestee, was not unconstitutionally excessive. In *Buckley*, the plaintiff had been arrested and secured by handcuffs, but failed to follow the officer's instructions to walk towards

the patrol vehicle. *See Buckley*, 292 Fed.Appx. at 792. Instead, the arrestee dropped to the ground, in the roadway, and crossed his legs. *See Id*. The officer instructed the arrestee multiple times to stand and walk, but each time the arrestee refused. *See Id*. The officer ultimately used his TASER in drive stun mode multiple times, each time warning the arrestee that he would use the TASER and offering him an opportunity to comply. *See Buckley*, 292 Fed.Appx. at 792-93. The arrestee only relented when back-up officers arrived on scene, and the arrestee was escorted to the patrol vehicle without further incident. *See Id*. at 794.

In upholding the use of the TASER as reasonable, the Eleventh Circuit noted that the officer could not complete the arrest—*i.e.* truly control the plaintiff—because the plaintiff was resisting. *See Buckley*, 792 Fed.Appx. at 794. "[H]ere [the arrestee] did resist:  for example, he physically dropped to the ground, repeatedly refused to comply with the deputy's reasonable order (even after being warned that a taser would be used), and made no effort to stand when the deputy attempted on two occasions to physically lift [the arrestee] to his feet." *Id*. at 798. Moreover, while the arrestee was in handcuffs, he was not fully secured as he "was not bound at the feet (so, he could both run and kick), he was moving around on the ground alongside a busy road, and he would not comply with the deputy's repeated instructions to stand up and to move to the patrol car where he could be

confined." *Buckley*, 292 Fed.Appx. at 795.  Importantly, the officer "resorted to using the TASER only after trying to persuade [the arrestee] to cease resisting, after attempting to lift [the arrestee], and after repeatedly and plainly warning [the arrestee] that a [TASER] would be used then giving [the arrestee] some time to comply." *Id.* at 794.

Notably, while the Eleventh Circuit observed that the underlying offense for which the arrestee was cited was relatively minor, the government had "a significant interest in enforcing the law on its own terms, rather than on terms set by the arrestee." *Buckley*, 792 Fed.Appx. at 794.[12]  In addition, the Court determined that the arrestee's injuries resulting from the use of the TASER were not severe, and the arrestee had pointed to no evidence that the use of the TASER had caused "second-order physical injuries" or otherwise required medical attention.  *See Id.* at 795.  As a result, the court concluded that the officer used a

---

[12]  *See also Hoyt v. Cooks*, 672 F.3d 972, 980 (11th Cir. 2012) (officers not required to wait indefinitely for a suspect to stop resisting or for a suspect's strange behavior to subside); *Crowell* v. *Kirkpatrick*, 667 F.Supp.2d 391, 409-410 (D. Vermont 2009), *affrm'd* No. 09-4100-cv, 400 Fed.Appx. 592 (2nd Cir. Nov. 15, 2008) (unpublished) (quoting *Magee v. City of Daphne*, 2006 WL 37919714, at *9 (S.D.Ala. Dec. 20, 2006) ("The government's significant interests in effecting arrests expeditiously and enforcing lawful police orders are not outweighed in this case by the infliction of temporary pain that caused no lasting or significant physical injury.  'Our system of law enforcement depends on police officers having the ability to back up their directives with force and take a subject into custody once he is placed under arrest.  It would render their authority illusory if police officers with probable cause to arrest a suspect were obligated to abandon their arrest whenever a suspect disregards lawful commands.'")

level of moderate, non-lethal force that was justified based on the resistance displayed, including the arrestee's dropping to the ground, his repeated refusal to comply with commands, and his failure to make any effort to stand when the officer made attempts to lift him to his feet. *See Id.* at 796-798. *See also Devoe v. Rebant*, No. 05-71863, 2006 WL 334297, at \*5-7 (E.D. Michigan Feb. 13, 2006) (unpublished) (use of TASER in drive stun mode to handcuffed arrestee's lower back after arrestee refused to get into the rear seat of the patrol vehicle was objectively reasonable and did not constitute excessive force); *Willkomm v. Mayer*, No. 05 C 523 S., 2006 WL 582044, at \*3-4 (W.D. Wisconsin March 9, 2006) (unpublished) (use of TASER on handcuffed arrestee suspected of driving under the influence was objectively reasonable after arrestee failed to comply with orders to place his feet inside a patrol vehicle prior to transport); *Magee v. Stitsworth*, No. 3:08-CV-0079 PS, 2009 WL 5175205, at \*4 (N.D. Indiana Dec. 22, 2009) (unpublished) (officer's use of TASER against handcuffed arrestee was objectively justified and within the range of acceptable responses to arrestee's intransigence when arrestee refused to comply with order to place his legs into the police car so that he could be taken to jail).

In sum, Hennix's disruptive and unpredictable behavior while she was seated in the rear seat of Barr's patrol vehicle reasonably justified Prickett's

conclusion that additional leg restraints were warranted as a precautionary measure prior to transport. While Hennix was arrested for a non-violent traffic offense, and did not direct her aggression towards the officers themselves, she still presented a level of resistance through her non-compliance that warranted the use of some moderate degree of force to complete her arrest. Prickett used a minimum amount of force to gain Hennix's compliance, and did so only after all other attempts to gain Hennix's compliance had failed, including verbal commands, physical manipulation of Hennix's legs, and the display of the TASER itself. Importantly, Hennix was given ample opportunity to comply with the officers' instructions to place her feet outside the vehicle. Thus, construing the undisputed facts in the light most favorable to Hennix, analysis of the *Graham* factors weighs in favor of finding that Prickett's use of the TASER was not objectively unreasonable, and he is therefore entitled to qualified immunity.

> **b.      Prickett's use of the TASER was not a violation of clearly established law.**

Even assuming *arguendo* that Prickett's use of the TASER constituted a violation of Plaintiff's Fourth Amendment rights, or assuming that the Court proceeds directly to the second prong of the qualified immunity analysis, Prickett is still entitled to qualified immunity from Hennix's claim.

As a preliminary matter, the District Court found that there was clearly

established law sufficient to put Prickett on notice at too high a level of generality.
The Supreme Court, as well as this Court, have "repeatedly told courts … not to
define clearly established law at a high level of generality." *Al-Kidd*, 131 S.Ct. at
2084. Therefore, a "general proposition," such as one that "an unreasonable search
or seizure violates the Fourth Amendment" is "of little help in determining whether
the violative nature of particular conduct is clearly established." *Al-Kidd*, 131
S.Ct. at 2084.

It very well may be that a "general principle," is clearly established.
*Cordova v. Aragon*, 569 F.3d 1183, 1192-93 (10th Cir. 2009). However, for such a
general principle to apply, it must apply "with obvious clarity to the specific
conduct in question." *Id.* Even then, the cases must be "factually analogous," and
"substantial differences from prior case law" prevent a finding of clearly
established law. *Id.*; *Thomas*, 607 F.3d at 669-70 (holding that actions actually
comported with clearly established law). A court cannot rest on the "shibboleth,"
or its own ipse dixit, that the law is clearly established. *Hernandez v. Story*, No.
11-2074, 459 Fed.Appx. 697, 700, 2012 WL 207059, at *3 (10th Cir. Jan. 25,
2012) (unpublished) (citing *Al-Kidd*, 131 S.Ct. at 2084). That "is precisely the sort
of general proposition the Supreme Court has said courts may not rely on." *Id.*

The District Court's reliance upon the generic principle that the Fourth

Amendment prohibits use of excessive force is insufficient under the standards imposed by the Supreme Court and this Court. [Aplt. App. at 0351.] Significantly, the District Court relied on no cases that were factually analogous to the particular conduct at issue in this case—*i.e.* the use of TASER in drive stun mode—and only cited a general proposition of unlawfulness. This is reversible error.

Given Prickett's assertion of qualified immunity, Hennix bears the burden of citing what she thinks constitutes the clearly established law applicable to her claim. *See Thomas*, 607 F.3d at 669 (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534-35 (10th Cir. 1995)). The underlying record reveals that Hennix has not pointed to any authority—and indeed, cannot point to any authority—that stands for the proposition that it is unreasonable to use a TASER as a pain compliance technique against a partially restrained, non-violent but disruptive misdemeant who disobeyed official commands.

In analyzing this prong of the qualified immunity analysis, the Tenth Circuit has concluded, "in determining whether a right is 'clearly established,' the courts assess the objective legal reasonableness of the action at the time of the alleged violation and ask whether the right was sufficiently clear that a reasonable officer would understand that what he was doing violated that right." *Medina*, 252 F.3d at 1128 (citing *Wilson v. Layne,* 526 U.S. 603, 615 (1999)); *see also Swanson v.*

*Town of Mountain View, Colo.*, 577 F.3d 1196, 1200 (10th Cir. 2009) ("One purpose of qualified immunity is that we do not force public officials to guess how the law will have developed by the time their actions were scrutinized in federal court. Instead, we look to the relevant precedents at the time of the challenged actions and the obviousness of the violation in light of them." (internal citations omitted)).

The qualified immunity analysis has shifted "from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law puts officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Federal Heights*, 509 F.3d at 1284 (analyzing *Hope v. Pelzer*, 536 U.S. 730, 741-42 (2002)). The Tenth Circuit has adopted a sliding scale approach to determine when law is clearly established. *See Id.* "The more obviously egregious the conduct in light of the prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004) (internal quotations omitted). *See also Pierce*, 359 F.3d at 1298 ("The degree of specificity required from prior case law depends in part on the character of the challenged conduct."); *Swanson*, 577 F.3d at 1200 ("[T]he [Court looks] to the relevant precedents at the time of the challenged violation and the obviousness of the

violation in light of them.") (internal citations omitted).

Prickett's use of the TASER was not such an egregious or obvious violation of Hennix's Fourth Amendment rights that Hennix should not be required to point a factually analogous precedent in opposition to Prickett's assertion of qualified immunity.  As the Sixth Circuit has recently noted, "there is no 'obvious cruelty inherent' in the use of tasers."  *Cockrell v. City of Cincinnati*, No.10-4605, 468 Fed.Appx. 491, 497, 2012 WL 573972 (6th Cir. Feb. 23, 2012) (unpublished). Thus, Hennix is required to point to a case, or cases, that are more factually analogous to the circumstances presented herein, *i.e.* she is required to point to case law that demonstrates a substantial correspondence to the conduct in question— using a TASER as a pain compliance technique against a partially restrained, non-violent but disruptive misdemeant who disobeyed official commands.  *See Romero v. Fay,* 45 F.3d 1472, 1475 (10th Cir. 1995).

During the underlying briefing, Hennix cited to a number of cases that she contended were the clearly established law that put Prickett on notice that his conduct was unlawful, including:  *Graham v. Connor*, 490 U.S. 386, 396 (1989), *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1283-8 (10th Cir. 2007) [Aplt. App. at 0119, 0298], *White v. Martin*, No. 10-7064, 424 Fed.Appx. 736, 744-45, (10th Cir. June 8, 2011) (unpublished) [Aplt. App. at 0122, 0298], *Brown v. City of*

*Golden Valley*, 574 F.3d 491, 496-497 (8th Cir. 2009) [Aplt. App. at 0123], *Orem v. Rephann*, 523 F.3d 442, 448-449 (4th Cir. 2008) [Aplt. App. at 0123], *Brown v. City of Golden Valley*, 534 F.Supp.2d 984, 993 (D. Minnesota 2008) [Aplt. App. at 0123], *Bryan v. MacPherson*, 620 F.3d 805, 826 (9th Cir. 2010) [Aplt. App. at 0123], and *Parker v. Gerrish*, 547 F.3d 1, 9 (1st Cir. 2008) [Aplt. App. at 0123]. Each of these cases is either legally insufficient or is factually dissimilar from the circumstances presented herein, and cannot stand for the clearly established law applicable to Prickett's conduct.

As stated above, the holding in *Graham* is crafted at too high a degree of generality to have put Prickett on notice that his conduct was unlawful. *See Casey*, 509 F.3d at 1284 (quoting *Saucier*, 533 U.S. at 202) (*Graham's* general proposition is not enough to turn *all* uses of excessive force into violations of clearly established law).

With respect to this Court's holding in *Casey v. City of Fed. Heights*, the facts of that case are distinguishable from the facts presented here. *Casey* involved an entirely different—and higher—degree of force, *i.e.* multiple applications of a TASER in dart mode. *See Casey*, 503 F.3d at 1280.[13] Unlike Hennix, the plaintiff

---

[13] The distinction between the use of a TASER in dart or probe mode, as opposed to use the device in drive stun mode, cannot be understated. While using a TASER in dart mode causes pain through a suspect's entire body and has a strong incapacitating effect

in *Casey* was never advised he was under arrest, was never given commands or instructions regarding his need to comply, was never warned regarding the use of the TASER prior to its application, and was never given the opportunity to comply with the officer's commands prior to the use of the TASER.  *See Casey*, 509 at 1281.  Therefore, *Casey* cannot reasonably stand for the proposition that the application of the TASER against Hennix in drive stun mode was unreasonable, excessive, or unconstitutional.

The holdings in *Bryan*, *Parker*, and *Brown* are all distinguishable for similar reasons.  While *Bryan* is a case decided by this Court, the facts of *Bryan* are not sufficiently factually analogous because that case involved the use of a TASER in dart mode.  *See Bryan*, 620 F.3d at 816.  *Parker* also analyzed the use of TASER in dart mode.  *See Parker*, 537 F.3d at 6.  Further, unlike the circumstances presented in this matter, in *Brown*, the Eighth Circuit reviewed the use of the TASER in drive stun mode, but where there was no prior warning to the plaintiff that the TASER would be used.  *See Brown*, 574 F.3d at 496-97.  Therefore, these cases will not

---

due to the darts' interference with the suspect's nervous system and muscular functioning, a TASER in drive-stun mode causes only localized and temporary pain and is non-incapacitating.  *See generally Brooks v. City of Seattle*, 599 F.3d 1018, 1026-1028 (9th Cir. 2010), *reversed* 661 F.3d 433 (9th Cir. 2012), *cert. denied* 132 S.Ct. 2682 (May 29, 2012).  Accordingly, using a TASER in drive-stun mode is arguably less intrusive, and is more akin to pain compliance, either through application of hands-on force or pepper spray.  *See Id.*; *see also Hoyt*, 672 F.3d at 981, n. 8 (TASER can be as a pain compliance weapon).

suffice as the clearly established law applicable to Prickett's use of the TASER.

In regard to Hennix's citation to *Orem*, in that case, the Fourth Circuit did analyze a use of a TASER in drive stun mode, but did so under the Fourteenth Amendment's substantive due process standards. *See Orem*, 534 F.3d at 445-46. Thus, the holding in *Orem*, is insufficient to have put Prickett on notice that his use of the TASER was violative of Hennix's Fourth Amendment rights. Finally, this Court's holding in *White* is not factually analogous precedent sufficient to put Prickett on notice that his of the TASER was unlawful because that case simply did not involve the use of TASER. *See White*, No. 10-7064, 424 Fed.Appx. at 744-45.[14] [15] Thus, Hennix has failed to point to any binding precedent that stands for the proposition that it is unconstitutional under the Fourth Amendment for an officer to use a TASER in drive stun mode on a partially restrained, but non-compliant arrestee.

Prickett notes that this conclusion is consistent with other federal courts that have addressed the question and found that there is no clearly established law on the use of TASERs in drive stun mode. *See Sanders v. City of Dothan*, No. 09-

---

[14] This Court's holding in *White* also cannot serve as clearly established law in this matter for the simple reason that the holding was issued more than a year after the incident giving rise to this litigation.

[15] Prickett also notes that the holdings in *Brown*, *Bryan*, *Orem*, and *Parker* cannot serve as clearly established law in this matter because they are not binding precedent in this jurisdiction.

16472, 409 Fed.Appx. 285, 290, 2011 WL 149521, at *5 (11th Cir. Jan. 19, 2011) (unpublished) (court could not determine that it was clearly established that a police officer was prohibited from momentarily tasering an uncooperative handcuffed arrestee who—after multiple warnings refused to comply with a justifiable law enforcement objective); *Clark v. Ware*, -- F.Supp.2d --, 2012 WL 1994788, at *5 (E.D. Mo. 2012) (court could not determine that, in November 2009, officer's repeated drive stun use of a TASER after arrestee was handcuffed violated clearly established law); *Burns v. Barreto*, 2012 WL 225855, at *13 (E.D. Cal. 2012) (only upon the Ninth Circuit's publications of opinions in 2010 and 2011 did the law regarding the distinctions between the use of TASERs in drive stun and dart modes begin to gain some clarity).

At best, the most factually analogous precedent are those cases that address the more general concept of pain compliance techniques on non-compliant subjects—namely, cases where non-TASER pain compliance devices were used.[16] Importantly, the consensus in this Circuit, as well as others, is that pain compliance is an acceptable use of force in situations where individuals who have been lawfully contacted repeatedly refuse to comply with lawful orders. For example, in *Mecham v. Frazier*, 500 F.3d 1200, 1205 (10th Cir. 2007), this Court upheld the

---

[16] *See* n. 13, *supra*.

use of pepper spray to subdue and remove an uncooperative, unresponsive, and belligerent traffic offender who refused to get out of her vehicle as objectively reasonable: "[The plaintiff's] disregard for the officers' instructions, the length of the encounter, and the implausibility of [the plaintiff's] rationale for not cooperating, lead [the Court] to conclude that the officers' use of force was justified in these circumstances." *See also Vinyard v. Wilson*, 311 F.3d 1340, 1348 n.12 (11th Cir. 2002) (internal citations omitted) (noting that federal courts, including the Ninth, Fifth, Sixth, and Eight Circuit Courts of Appeals, have consistently concluded that using pepper spray is reasonable where the plaintiff was either resisting arrest or refusing police requests to enter a patrol car or go to the hospital).

As set forth above, the use of a TASER in drive stun mode is a pain compliance technique, equivalent to the use of hands on force and/or pepper spray. Simply put, there is nothing about the line of cases in the federal circuits and district courts addressing pain compliance techniques against non-complaint suspects that would have put Prickett on notice that his use of the TASER in drive stun mode against Hennix on February 11, 2010 was unlawful. In the absence of such authority, Prickett is entitled to qualified immunity from Hennix's claim.

## VI.    <u>CONCLUSION</u>

For the reasons stated above, the District Court incorrectly determined that Prickett was not entitled to qualified immunity.  Prickett's actions during this incident did not result in a constitutional violation under a Fourth Amendment analysis.  Nor can his actions be considered a violation of clearly established law. Indeed, Prickett's actions were those of a reasonable law enforcement officer faced with an intoxicated, non-compliant, unpredictable an only partially restrained suspect, and he is accordingly entitled to qualified immunity from Hennix's claim.

Because Prickett is entitled to qualified immunity, the District Court erred when it denied Prickett's motion for summary judgment.  Prickett requests that this Court reverse the District Court's Order denying his Motion for Summary Judgment.

## ORAL ARGUMENT IS REQUESTED.

This Court has not previously addressed the question of whether the use of a TASER in drive stun mode against a partially restrained, but otherwise non-compliant suspect is unreasonable in violation of clearly established law. Therefore, oral argument will aid the Court in understanding and addressing the issues presented by the Parties' briefs.

Respectfully submitted,


s/ Eric M. Ziporin
Eric M. Ziporin


s/ Sarah E. McCutcheon
Sarah E. McCutcheon
SENTER GOLDFARB & RICE, L.L.C.
1700 Broadway, Suite 1700
Denver, CO 80290
Telephone:  (303) 320-0509
FAX:  (303) 320-0210
E-mail:  eziporin@sgrllc.com
E-mail:  smccutcheon@sgrllc.com
*Attorneys for Defendant-Appellant Shane Prickett*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS</u>

1.      This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because this brief contains 9,976 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point, Times New Roman.


s/Eric M. Ziporin
Eric M. Ziporin


s/ Sarah E. McCutcheon
Sarah E. McCutcheon
*Attorneys for Defendant-Appellant*

## <u>CERTIFICATE OF DIGITAL SUBMISSION</u>

All required privacy redactions, if any, have been made and, with the exception of those redactions, if any, every document submitted in Digital Form is an exact copy of the written document filed with the Clerk.

The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program Trend Micro Worry-Free Business Security Agent and, according to the program are free of viruses.

I certify that the information on this form is true and correct to the best of my knowledge and belief after a reasonable inquiry.

s/ Wendy McCann
Wendy McCann
Legal Secretary

43

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 9th day of November, 2012, the foregoing true and correct **OPENING BRIEF OF APPELLANT OFFICER SHANE PRICKETT** was served on the following in the manner indicated:

Mr. Patrick Fischer, Clerk
United State Court of Appeals for the Tenth Circuit
Byron White U.S. Courthouse
1823 Stout Street
Denver, Colorado 80257
(Electronic submission on November 9, 2012, via CM/ECF) and (seven (7) hard copies to be sent via U.S. Mail and/or hand delivered within two days of this electronic filing).

L. Dan Rector
ldanrec@comcast.net

Terry E. Rector
trector@terryrectorlaw.com

(By e-mail in PDF format to all counsel of record above and via
Electronic submission on November 9, 2012, via CM/ECF).


s/ Wendy McCann
Wendy McCann
Legal Secretary

44

00695691.DOC