CASE NO. 12-1307

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

LARA ROOSEVELT-HENNIX,

Plaintiff - Appellee

v.

SHANE PRICKETT,

Defendants - Appellant

---

On Appeal from the United States District Court for the District of Colorado
The Honorable Richard P. Matsch
D.C. No. 11-cv-00353-RPM

---

**OPENING BRIEF OF APPELLEE LARA ROOSEVELT-HENNIX**

---

L. Dan Rector
131 S. Weber
Colorado Springs, CO 80903
Telephone: 719-473-0075
E-mail:  ldanrec@comcast.net

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES…………………………………………………… 2

I.     STATEMENT OF THE ISSUES FOR REVIEW…………………… 5

II.    STATEMENT OF THE CASE………………………………… ……. 5

III.   STATEMENT OF THE FACTS……………………………………... 6

IV.  SUMMARY OF THE ARGUMENT……………………………. 11

V.    ARGUMENT……………………………………………………….. 11

     A & B Standard of Review – Motions for Summary Judgment Generally/Qualified Immunity………………………………………………..11

     C.    The District Court properly held that Prickett was not entitled to qualified immunity…………………………………………………………12

VI.  CONCLUSION…………………………………………………..22

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS………………………………………………………24

CERTIFICATE OF DIGITAL SUBMISSION………………………………25

CERTIFICATE OF SERVICE………………………………………………..26

## TABLE OF AUTHORITIES

**Cases**                               **Page**

Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir.2007)   11,18,20

White v. Martin, No. 10-7064, United States Court of Appeals,     19

Tenth Circuit, June 8, 2011

Brown v. City of Golden Valley, #08-1640, 2009 U.S. App.          17,21

   Lexis 16071 (8th Cir.)

Orem v. Rephann, No. 07-1696, 2008 U.S. App. Lexis 9178 (4th Cir.) 21

Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir.2010),

               630 F.3d at 832                                    21

Parker v. Gerrish, 547 F.3d 1 (1st Cir.2008)                      21

Peterson v. Arapahoe County Sheriff, 72 P.3d 440 (Colo.App. 2003)  12

Salazar v. Butterball, 644 F.3d 1130, 1136 (10th Cir. 2011).      12

Grynberg v. Total, 538 F.3d 1336, 1346 (10th Cir. 2008)          12

Thom v. Bristol-Myers Squibb Co., 353 F.3d 848, 851 (10th Cir. 2003)  12

Lanman v. Hinson, 529 F.3d 673, 683 (6th Cir. 2008)              12

Sheets v. Mullins, 287 F.3d 581, 586 (6th Cir. 2002)            12

Heyne v. Metro. Nashville Pub. Sch., 655 F.3d 556, 562 (6th Cir. 2011) 12

42 U.S.C. § 1983                                                13

Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865,

     104 L.Ed.2d 443 (1989)                              15

Deorle v. Rutherford, 272 F.3d 1272, 1279-80 (9th Cir.2001)      15

Clanton v. Cooper, 129 F.3d 1147 (10th Cir. 1997)              16

Feathers v. Aey, 319 F.3d 843, 848 (6th Cir.)                  16

Thomas v. Plummer, 11-3165, 11-3181,

   United States Court of Appeals, Sixth Circuit, July 17, 2012    16

Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) 18

## **PRIOR OR RELATED APPEALS**

There are no prior or related appeals.

## JURISDICTIONAL STATEMENT

The Appellee does not dispute the Appellant's Jurisdictional Statement

## I. STATEMENT OF THE ISSUES FOR REVIEW

1. Whether Roosevelt-Hennix has met her burden of proof that the qualified immunity asserted by Prickett under a § 1983 claim fails because Prickett used the excessive force upon Roosevelt-Hennix.

2. Whether the law was clear at that time that using an Electronic Control Device in such a manner violated the guidelines of *Graham*.

## II. STATEMENT OF THE CASE

Plaintiff-Appellee Roosevelt-Hennix asserted claims against Defendant Prickett for use of excessive force that included the use of an Electronic Control Device ("Taser") that was unreasonable in light of the facts and circumstances confronting him; and that by his actions, Prickett acted under color of state law to deprive her of her right to be free from the use of excessive force as guaranteed by the Fourth Amendment of the Federal Constitution.

Roosevelt-Hennix asserts that Prickett had no qualified immunity because of his violation of the *Graham* criteria, which includes using the Taser as a punitive measure.

Roosevelt-Hennix otherwise does not disagree for the most part with the Defendant's Statement of the Case, except, as noted in her Response to the Motion

5

for Summary Judgment, the Appellant chooses to characterize certain of the more inflammatory of those facts (for example, citing to the Plaintiff's alleged profanity), but selectively omits others (ignoring the profanity and punitive language employed by Prickett after tasing Roosevelt-Hennix).

Those differences are noted in the Statement of the Facts below.

### III.    STATEMENT OF THE FACTS

### A. Facts of the "tasing"incident

Plaintiff Lara Roosevelt-Hennix is a female who was driving a vehicle in Florence, Colorado, on February 11, 2010, when she stopped her car in a parking lot at the direction of Officer James Barr, a male who at that time was acting in his official capacity as an officer of Defendant City of Florence, Colorado. Barr Offense Case Report (Applt App page 0130-0135); Prickett Offense Case Report (Applt App page 0136-0138)  The Plaintiff was driving a Mini-Cooper vehicle towing a trailer with an oxygen unit on it (Photos of vehicle Applt App page 0144), and her daughter and an adult friend (Curtis Bontrager) were in the vehicle with her at the time. Roosevelt-Hennix had been at a friend's house after Bontrager had picked her and her daughter up earlier in the day, but later, believing Bontrager to be too intoxicated to drive, chose to drive home at the time she was stopped by Officer Barr.

After setting up a speed trap and claiming that he clocked Roosevelt-Hennix

travelling nine miles over the posted speed limit, Barr requested that Roosevelt-Hennix perform what is commonly called a roadside sobriety test. Roosevelt-Hennix fully cooperated with that request, but advised Barr at that time and again shortly thereafter that she had a back condition that limited her ability to perform certain physical acts. (Ms. Roosevelt-Hennix has a history of back conditions which affects her mobility.) (Barr deposition excerpts - Applt App page 0145-0173); Hennix deposition excerpts - Applt App page 0174-0181).

After determining that he was going to arrest Roosevelt-Hennix for minor traffic violations, Barr summoned Pickett, a male who was also working that evening in his official capacity as an officer of the Florence Police Department. (Prickett deposition excerpts - Applt App page 0182-0216), although this arrest occurred in a parking lot next to the roadway and posed no danger to the adjacent traffic. Barr had placed the Plaintiff in handcuffs that restrained her hands behind her back, and then put Roosevelt-Hennix in the back seat of a patrol car. Barr admits that Ms. Roosevelt-Hennix fully cooperated with him in the process of submitting to the testing, the handcuffing and being moved to the squad car, but that she continuously expressed concern to Barr and later Prickett about the well-being of her young daughter, who remained in the Roosevelt vehicle with Bontrager while Hennix-Roosevelt was placed in the patrol call behind her car where she could not see her daughter. (Roosevelt-Hennix deposition excerpts -

Applt App page 0174-0181).

According to Ms. Roosevelt-Hennix, after having the door shut and leaving her alone in the car, she "panicked", "didn't know what was going on with her daughter", and yelled for the officers. She said that she asked if they could leave the door open so she wouldn't panic, but the officers refused. (Roosevelt-Hennix deposition, pp. 159-160. - Applt App page 0083)

Upon his arrival, Prickett decided to place Roosevelt-Hennix in leg restraints, apparently upset that she was obstreperous, crying, and asking for her daughter, even though she was already handcuffed in the back of the patrol car, and posed neither a physical threat to the officers nor any risk of escape. (Defendant's Exhibit D, Taser audio -Applt App page 0098-0099)  When asked by Prickett to put her legs outside of the patrol car for the purpose of placing the leg restrains on her, Roosevelt-Hennix again advised the officers that she was unable to do so without physical pain because of her medical condition. At that point, Prickett decided to use his Taser, an Electronic Control Device, upon Roosevelt-Hennix's thigh, causing her extreme pain. When she immediately screamed "That hurts!", Prickett replied, "No shit, it hurts", and that Roosevelt-Hennix should have thought about the pain before refusing to put her legs outside the car.

When asked at deposition, Prickett testified that he was upset with Roosevelt-Hennix for kicking the "back of his car", and he stated that "gives as

good as he gets." (Prickett testified that he uses the Taser for pain compliance.)

Roosevelt-Hennix denies kicking the cage or door in the vehicle, only admitting that she banged her head against the window in an attempt to get the officers to return to the car.

After being tased Roosevelt-Hennix immediately indicated that she lost feeling in her legs as a result, and the officers took her to the hospital for treatment because of her paralysis. Ultimately, she required hospitalization and underwent surgery on her lower body the next day.

### B. City of Florence guidelines

The City of Florence uses guidelines that included the use of the Taser as one of a number of non-lethal methods only under certain conditions. (Applt App page 0217-0227 Exhibit 7, Applt App page 0228-0230 Exhibit 8, and Applt App page 0231 Exhibit 9 – City of Florence Operating Procedures). They include the guidelines for arrest for a traffic stop that include "handcuff prisoner with both hands behind the back and double lock the handcuffs…Place prisoner in rear seat of partitioned patrol car…seat belt prisoner…[and] transport prisoner to appropriate destination". (p. 38) No mention is made of hobbling a prisoner or tasing someone once they are in the back of the patrol car.

The guidelines under Chapter 20.0 – Force and Firearms – include the justification of use reasonable and appropriate physical force only when it is

necessary to prevent a theft, criminal mischief, or criminal tampering; or in defense of the officer or a third person where there is imminent danger or other defined offenses such as kidnapping or sexual assault. (Applt App page 0230). Force in making an arrest or preventing an escape is also sanctioned, but there is no mention of using physical force in any circumstances where the person is restrained as Roosevelt-Hennix was.

As to Tasers, the specific Florence Operating procedures (Applt App page 0231) state that the Taser is to be used prior to handcuffing the subject, noting that the "use of the Taser gun constitutes use of force" and that "each discharge of a Taser gun shall be investigated and documented by the officer's offense case report." No such "use of force" report has ever been produced, and apparently does not exist.

Expert witness Charles Stephenson after reviewing the facts of the case concluded in pertinent part that neither officers considered "less intrusive or physically less painful options" for securing Ms. Roosevelt-Hennix in the patrol car, and that the use of the Taser was "unnecessary, arbitrary and punitive in nature", particularly where Prickett states after the tasing that "No shit, it hurts" because Roosevelt-Hennix should "quit kicking my car" and she "should have thought about your daughter before driving drunk", which was "judgmental, punitive and unnecessary use of psychological and physical force against Hennix."

(Applt App page 0234-0235)

Stephenson also noted that using the Conduced Energy Device (Tazer) "violated the basic tenants of Law Enforcement when dealing with the public and "use of force". He cites to the Florence guidelines that an officer should only use the Taser to "affect an arrest, prevent escape from custody, and defend themselves against the immediate user of physical harm from another or gain compliance with orders for public safety." (Applt App page 0234-0235)

At the conclusion of the hearing on the Defendant's Motion for Summary Judgment, Judge Matsch ruled that this is "quintessentially a jury matter." (page 30, transcript of hearing)

## IV. SUMMARY OF THE ARGUMENT

Roosevelt-Hennix has provided ample proof that the qualified immunity that might otherwise attach to Prickett under a § 1983 claim fails because Prickett was responsible for the excessive force used upon Roosevelt-Hennix, and the law was clear at that time that using an Electronic Control Device in such a manner violated that guidelines of *Graham* and the interpretation of *Graham* in the 10th Circuit cases of *Casey v. Federal Heights* and *White v. Martin*.

## V. ARGUMENT

### A. and B.    Standard of Review – Motions for Summary Judgment Generally/Qualified Immunity

The court reviews a grant of summary judgment de novo, applying the same

11

standards as the district court, pursuant to Federal Rule of Civil Procedure 56(c). *Salazar v. Butterball*, 644 F.3d 1130, 1136 (10th Cir. 2011). See also *Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008). "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way" and a dispute "of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

Qualified immunity is an affirmative defense. Accordingly, the defendant bears the burden of pleading it in the first instance. *Lanman v. Hinson*, 529 F.3d 673, 683 (6th Cir. 2008); *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

"When a defendant appeals the denial of a motion to dismiss based on qualified immunity, we review de novo whether the complaint alleges violation of a clearly established constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011). In so doing, "[w]e apply the ordinary standard used in reviewing motions to dismiss, accepting well-pled factual allegations as true . . . [and] reading the complaint in the light most favorable to the plaintiff." Id. at 562–63.

**C. The District Court properly held that Prickett was not entitled to qualified immunity.**

The law at issue here is well known: "Every person who, under color of . . . [state law], subjects, or causes to be subjected, any citizen of the United States . . .

to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983."

The facts of this case are remarkably undisputed. Roosevelt-Hennix was driving a vehicle at the most nine miles over the speed limit, had her young daughter in the car when she was stopped, and offered no resistance at any time in the arrest process. In this case, Officer Barr openly acknowledges that he received full cooperation from Roosevelt-Hennix throughout his active involvement in the arrest process, and it was he who as the arresting officer, cuffed her hands behind her and placing her in the patrol car, as before, always without resistance.

After placing Roosevelt-Hennix in this position of vulnerability, Prickett encountered her for the first time when he arrived at Barr's request. Barr knew Roosevelt-Hennix had advised him on at least two occasions that because of her back condition, she lacked the mobility to move her legs easily. Prickett nonetheless attempted to hobble Roosevelt-Hennix, even though Barr had not chosen to do so, and did not carry leg restraints himself. Although Roosevelt-Hennix admits only to banging her head against the window to gain attention when she was concerned about her daughter, even by Prickett's version of the truth, at worst a seated and restrained Roosevelt-Hennix was kicking the seat in front of her as the act triggering the tasering. Most significantly, even if there were some compelling reason to restrain the feet of a handcuffed person who had no reason to

13

flee and did not pose a danger to the officers or others, the two officers never attempted to lift the legs of Ms. Roosevelt-Hennix to obtain compliance, Prickett instead chose to taser her.

From the outset, Roosevelt-Hennix was being charged with only minor traffic violations (she was never tested for driving while ability impaired because of the hospitalization after the tasing incident.) and She had cooperated by stopping her vehicle after Officer Barr's overhead lights were activated; she attempted to perform the roadside sobriety test without protest despite her physical limitations; and she willingly submitted to being handcuffed and entering the patrol vehicle.

She had been arrested by Barr prior to being tased by Prickett; she was handcuffed when she was tased, and the behavior that caused Prickett to taser her was her agitation over the well-being of her daughter, and arguably kicking the seat well of the patrol car. Significantly for the purposes of this Motion, Roosevelt-Hennix denies acting out in the back of the patrol car, rather states that she was concerned (understandably) about her young daughter.

Both officers admitted that Roosevelt-Hennix was no risk of flight (her young daughter was with her); did not pose a risk of physical violence to anyone (except to herself, Prickett rationalized later); and was stopped for a minor traffic violation. Prickett did not need to "hobble" Roosevelt-Hennix, a restraint that Barr as the arresting officer did not employ when he was the only policeman present;

and doing so was based exclusively upon Prickett's admitted anger over the fact that she is "kicking my car", according to the audio tape of the incident (Defendant's Exhibit D) and his deposition testimony, and therefore used the Taser to punish Roosevelt-Hennix ("I give as good as I get.") when lesser force would have easily sufficed to accomplish their goal (two 200 pound males could physically displace the feet of a handcuffed, seated female from the seat well).

It is well established in excessive force cases that *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) provides the template for evaluating such claims. "We apply Graham by first considering the nature and quality of the alleged intrusion; we then consider the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Deorle v. Rutherford*, 272 F.3d 1272, 1279-80 (9th Cir.2001). Ultimately, the "'most important" Graham factor is whether the suspect posed an "'immediate threat to the safety of the officers or others." *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir.2005) (en banc) (quoting Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir.1994). A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern. *Deorle*, 272 F.3d at 1281.

Judge Matsch determined that under Roosevelt-Hennix's version of the facts, at least a fact issued remains as to whether Prickett violated clearly established law. *See Clanton v. Cooper*, 129 F.3d 1147 (10th Cir. 1997). An action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.)

The court in *Thomas v. Plummer*, 11-3165, 11-3181, United States Court of Appeals, Sixth Circuit, July 17, 2012, recently analyzed a taser situation where no resistance was offered by the person tased:

> Thomas [the person tased] disobeyed Officer Plummer's original command to lie face-down on the ground. She did not do so through violence or flight, but through questions. By the time Officer Plummer deployed his taser, however, Thomas had assumed a completely submissive position by dropping to her knees and raising her hands above her head. Then, and only then, did he walk behind her and tase her in the back. In light of these facts, the question presented is whether an officer's tasing a once-disobedient suspect who has stopped resisting constituted excessive force, as of August 23, 2009. We hold that it did.

> First, like the district court, we have "little trouble finding that a hypothetical reasonable officer would have known that tasing a suspect who is on her knees with her hands in the air is objectively unreasonable." A taser is an electric stun-gun. (citation in original) Although, some argue, it is a relatively safe and highly effective law-enforcement tool, *see, e.g.*, *Mattos v. Agarano*, 661 F.3d 433, 453–54 (9th Cir. 2011) (en banc) (Kozinski, C.J., concurring in part and dissenting in part), a taser nevertheless "intrudes upon the victim's physiological functions and physical integrity in a way that other non-lethal uses of force do not." *Bryan*, 630 F.3d at 825. "[E]specially with the newer tasers, the nature and quality of their intrusion on the

individual's Fourth Amendment interests is somewhat unique in that they render even the most pain tolerant individuals utterly limp." *McKenney v. Harrison*, 635 F.3d 354, 362 (8th Cir. 2011) (Murphy, J., concurring). Put simply, "tasers . . . constitute an intermediate or medium, though not insignificant, quantum of force." *Bryan*, 630 F.3d at 826 (internal quotation marks omitted).

Tellingly, the Court went on to say:

> **The severity of the crime at issue, the first Graham factor, calls Officer Plummer's use of such force into question...**Of course, the use of force can be reasonable, even when the crime at issue is innocuous. To determine whether this is so, we turn to the last two Graham factors: "whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she was] actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. These two factors militate strongly against Officer Plummer's use of force. Without question, Thomas disobeyed Officer Plummer's commands. But obedience is not an on-off switch. Officer Plummer did not use his taser while Thomas was standing, gesturing at him. Instead, he waited until she had dropped to her knees and raised her hands over her head. Then, he walked behind Thomas and tased her in the back. **When Officer Plummer deployed his taser, Thomas posed absolutely no threat to his or any other officer's safety; nor did she offer any active resistance. To tase her in this scenario was not reasonable. Officer Plummer violated Thomas's Fourth Amendment rights.**[1] (emphasis added)

See also *Brown v. City of Golden Valley*, 574 F.3d 491, 498–99 (8th Cir. 2009) (tasing car passenger who was not attempting to flee or resist arrest was excessive force).

The Supreme Court has held "a general constitutional rule already identified

---

[1] Interestingly, as in this case, the defendant argued that the person tased "suffered no injury", to which the Thomas court replied: "Officer Plummer argues that Thomas suffered no injury. The complaint, however, alleges that "[Officer Plummer's] actions have caused and continue to cause Ms. Thomas to suffer economic, physical and emotional pain, suffering, and other injuries." This is enough for our purposes. *Heyne*, 655 F.3d at 562–63."

in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). The *Hope* decision shifted the qualified immunity analysis from "a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir.2007)

The 10th Circuit case of *Casey v. City of Fed. Heights* is highly applicable to the Roosevelt-Hennix facts.. In *Casey*, the Plaintiff was arrested by one officer (an Officer Sweet) and tased by a second officer (Lor) outside a courthouse where Casey had mistakenly taken a court file to his car prior to returning to the courthouse to pay a fine. According to the case, "Mr. Casey was not fighting back even though Officer Sweet had tackled him and ripped his shirt. Officer Lor fired almost immediately upon arrival, and one witness testified that she could not have known what was going on." As to Lor's claim for qualified immunity as the tasing officer, the Court said: "Applying Graham's test of objective reasonableness, [Lor's behavior] cannot be justified by 'the severity of the crime at issue,' by any 'threat to the safety of the officers or others,' or by 'active resistance to arrest or [an] attempt to evade arrest by flight.' Id. at 396, 109 S.Ct. 1865. The crime was

not severe, Mr. Casey was not threatening, and he was not fleeing the scene."

The Court went on to state in facts relevant to the Hennix-Roosevelt case:

[W]e have held that it was not excessive for officers to use an "electrical stun gun" on a man after grabbing him and wrestling him to the ground. But we noted that what justified this conduct was his active resistance to arrest—[the man] was kicking and biting the officers and had shoved one of them to start the fight. 509 F.3d 1278, 1285 (10th Cir. 2007) (citing Hinton v. City of Elwood, 997 F.2d 774, 776–77 (10th Cir. 1993)). **Without active resistance, the equation is different**. "[A] stun gun inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless." Hickey v. Reeder, 12 F.3d 754, 757 (8th Cir. 1993). Absent some compelling justification—such as the potential escape of a dangerous criminal or the threat of immediate harm—the use of such a weapon on a non-resistant person is unreasonable. See Wysong v. City of Heath, 260 F. App'x 848, 852 (6th Cir. 2008) at 855 ("There is no government interest in striking someone who is neither resisting nor trying to flee.") (emphasis added)

**[It] is excessive to use a Taser to control a target without having any reason to believe that a lesser amount of force-or a verbal command-could not exact compliance.** Because a reasonable jury could find that Officer Lor lacked any such reason, she is not entitled to summary judgment on the constitutional violation….An officer's violation of the Graham reasonableness test is a violation of clearly established law if there are "no substantial grounds for a reasonable officer to conclude that there was legitimate justification" for acting as she did. Holland, 268 F.3d at 1197. Each factor in Graham counseled against the use of a large amount of force." (emphasis added)

Following the *Casey* rationale, this Circuit in *White v. Martin*, No. 10-7064,

United States Court of Appeals, Tenth Circuit, June 8, 2011, recently held in a

similar situation:

On whether there was a Fourth Amendment violation for excessive force, the district court relied on the three factors identified in Graham, 490 U.S. at 397. First, the court found the relatively minor

severity of the alleged crime at the scene – misdemeanor obstruction of the officer – favored Mr. White in part because he was trying to transport a patient to the hospital. Second, the court found Mr. White did not pose a threat. Third, the court noted Mr. White did not flee but did resist arrest…By denying summary judgment on this issue, the district court determined that a reasonable jury could find Trooper Martin's use of force against Mr. White to be unreasonably excessive and therefore unconstitutional. See Casey v. City of Fed. Heights, 509 F.3d 1278 (10th Cir. 2010).

Employing the Graham factors and viewing the facts in the light most favorable to the plaintiff, the court determined that Mr. Casey had committed at most a misdemeanor in a harmless manner, that the officers had no reason to believe he constituted a threat to anyone's safety, and that Mr. Casey was not actively resisting arrest or attempting to evade arrest by flight. The court concluded that a "reasonable jury could find [the officer's] use of force to be excessive and therefore unconstitutional." 509 F.3d at 1283; see also Weigel v. Broad, 544 F.3d 1143, 1152-53 (10th Cir. 2008) (finding it significant that force was applied after resistance to arrest ceased).

The trend evidenced in this case, what has been called "Taser dependency," or so-called "Lazy Cop Syndrome", has been well documented in other cases, particularly in cases involving minor offenses. (that is; police officers relying on a Taser rather the officer's alternative non-lethal tools or personal skills in conflict resolution). Where an officer suspected a motorist had committed a misdemeanor open bottle violation punishable by 90 days incarceration, a federal appeals court said that that an officer's use of a Taser against the motorist was not necessarily objectively reasonable, and that the officer was not entitled to summary judgment because the plaintiff in that case was not actively resisting arrest or attempting to flee, and posed little or no threat to the officer or members of the public. It is

clearly established that it is unreasonable to Taser a person who was suspected of a minor, non-violent offense where the plaintiff had not attempted to flee, gave no indication of violence, and the female plaintiff's husband had already been secured in the squad car at the time. The plaintiff merely allegedly disobeyed orders to cease talking on a phone to a 9-1-1 operator. *Brown v. City of Golden Valley*, No. 06-3141, 2008 U.S. Dist. Lexis 11300 (D. Minn.); *Brown v. City of Golden Valley*, #08-1640, 2009 U.S. App. Lexis 16071 (8th Cir.)

A deputy's use of a Taser against an arrestee when she was handcuffed and in foot restraints was unnecessary and excessive, and (significantly for the Roosevelt-Hennix case)  while the Taser was only applied for 1.5 seconds, it was allegedly applied in a wanton, and sadistic manner, and not as part of a good faith effort to restore discipline. Thus, the use of a Taser to intimidate or punish an arrestee is not objectively reasonable and violates clearly established law, so that the deputy was not entitled to qualified immunity. *Orem v. Rephann*, No. 07-1696, 2008 U.S. App. Lexis 9178 (4th Cir.).

See also *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir.2010), 630 F.3d at 832 (holding that the plaintiff alleged a constitutional violation where he was tased in dart mode even though he "was neither a flight risk, a dangerous felon, nor an immediate threat") and *Parker v. Gerrish*, 547 F.3d 1 (1st Cir.2008) (upholding a jury verdict for excessive force used against a driver stopped for speeding who

admitted to drinking, exchanged hostile words with an officer, and initially resisted arrest before being tased).

Taser cases historically involve the process of using the ECD to affect the arrest, not after one is already under arrest and restrained, as Ms. Roosevelt-Hennix was. (See Amendment to Florence Police Department Standard Operating Procedure, Exhibit 8 – "After securing the subject who has been Tasered in handcuffs… (emphasis supplied)".)  Prickett argues that use of a Taser for pain compliance is always justified. Under Prickett's reasoning, all disagreement with a police officer constitutes resistance, even though persons who are arrested are by nature upset, agitated and generally disagreeable. Yet Roosevelt-Hennix offered no such combativeness to Barr, nor did Barr attempt to "hobble" her; Prickett simply arrived to find a restrained and generally compliant person, and rather than employ other means, decided to use his personal Taser to punish Roosevelt, or, as he said, "give as good as he gets."

In this case, Roosevelt-Hennix's behavior met none of the criteria supporting the use of the Taser in Florence's guidelines or anywhere else.

## VI. CONCLUSION

Roosevelt-Hennix has met the standards for proving that Prickett does not have the protection of qualified immunity, and those standards were known to Prickett at the time of the incident with Roosevelt-Hennix. There are at a minimum

unresolved questions of fact as to what occurred to precipitate the tasing of Ms.

Roosevelt-Hennix., and as a result, the trial court properly denied the Defendant's

Motion for Summary Judgment as to Officer Prickett.

Respectfully submitted,


/s/_____

L. Dan Rector
131 S. Tejon
Colorado Springs, CO 80903
Telephone: 719-473-0075
E-mail: ldanrec@comcast.net
*Attorney for Plaintiff-Appellee Lara*
*Roosevelt-Hennix*

23

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.     This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because this brief contains 10,250 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point, Times New Roman.

/s/_____
L. Dan Rector
*Attorney for Plaintiff-Appellee*

## **CERTIFICATE OF DIGITAL SUBMISSION**

All required privacy redactions, if any, have been made and, with the exception of those redactions, if any, every document submitted in Digital Form is an exact copy of the written document filed with the Clerk.

The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program Avira Antivirus and, according to the program, are free of viruses.

I certify that the information on this form is true and correct to the best of my knowledge, information and belief after a reasonable inquiry.

/s/_____
        Jan Breslin
        Paralegal to L. Dan Rector

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 13th day of December, 2012, the foregoing true and correct OPENING BRIEF OF APPELLEE LARA ROOSEVELT-HENNIX was served on the following in the manner indicated:

Mr. Patrick Fischer, Clerk
United States Court of Appeals for the Tenth Circuit
Byron White U.S. Courthouse
1823 Stout Street
Denver, Colorado  80257
(Electronic submission on December 13th, 2012, via CM/ECF) and seven (7) hard copies to be sent via U.S. Mail and/or hand delivered within two days of this electronic filing).

Eric M. Ziporin
exiporin@surllc.com

Sarah E. McCutcheon
smccutcheon@surllc.com

(By e-mail in PDF format to all counsel of record above and via Electronic submission on December 13th, 2012, via CM/ECF)

/s/  Jan Breslin
Jan Breslin
Paralegal to L. Dan Rector